# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SERVICE EMPLOYEES
INTERNATIONAL UNION NATIONAL
INDUSTRY PENSION FUND, *et al.*,

    *Plaintiffs*,

    v.

M.R. OF AMBOY, LLC, *et al.*,

    *Defendants*.

No. 19-cv-1405 (DLF)

## MEMORANDUM OPINION

Before the Court is the Plaintiffs' Motion for Default Judgment. Dkt. 9. For the reasons that follow, the motion will be granted.

### I. BACKGROUND

The plaintiffs in this case are the Service Employees International Union National Industry Pension Fund (Pension Fund), an employee pension benefit plan, and its trustees. Compl. ¶¶ 5–6. The Pension Fund is a multiemployer pension plan organized under the Employee Retirement Security Act (ERISA). *Id*. ¶ 5; *see* 29 U.S.C. § 1002(2), (3), (37)(A). The defendants, M.R. of Amboy, LLC and H.W. of Amboy, LLC, are limited liability companies registered in the state of New Jersey. Compl. ¶¶ 8–9. The plaintiffs allege the companies are "in effect alter egos" that operate and do business under the name Amboy Care Center. *Id*. ¶¶ 10–11. They also allege that the defendants are "employer[s] in an industry affecting commerce" as defined by ERISA. *Id*. ¶ 7; *see* 29 U.S.C. § 1002(5), (11), (12).

The Service Employees International Union Local 1199 United Healthcare Workers East, NJ Region (the Union) is the exclusive bargaining representative for certain employees at

Amboy Care Center. *Id.* ¶ 12. As relevant here, Amboy's obligations are primarily governed by the collective bargaining agreement between the Union and Amboy. *See id.* ¶ 13. Under the terms of the agreement, Amboy must contribute certain amounts to the Pension Fund based on the number of hours worked by its employees covered by the agreement. *Id.* ¶ 16. Amboy must also submit remittance reports to the Pension Fund detailing the names and number of compensable hours for each covered employee. *Id.* ¶ 18. Pursuant to both the agreement and the Pension Protection Act of 2006, *see* 29 U.S.C.§ 1085, Amboy is required to pay supplemental contributions if the Pension Fund is deemed to be in "critical status" to help correct the Pension Fund's financial situation. *Id.* ¶ 21.

The collective bargaining agreement also binds Amboy to the Pension Fund's Agreement and Declaration of Trust (Trust Agreement). *Id.* ¶ 17. Under the Trust Agreement, Amboy is liable for interest on delinquent contributions; liquidated damages; and attorneys' fees and costs. *Id.* ¶ 19. In this action, the plaintiffs seek a total judgment of $23,623.80 based on allegations that the defendants failed to make required contributions and $6,240.43 in attorneys' fees and costs. *See* Pls.' Mot. at 1.[1] The plaintiffs also seek equitable relief directing the defendants to

---

[1] The Complaint calculates the amount owed by the defendants in unpaid contributions, interest and liquidated damages for the period of April 2013 to January 2019. *See* Compl. ¶ 30. Since it appears the plaintiffs continued to accrue unpaid contributions, the plaintiffs' Motion for Default Judgment seeks additional funds from April 2013 through July 2019, as well as interest calculated on this amount through October 1, 2019. *See* Pls.' Mot. at 14; Toussaint Decl. ¶ 25. Even though Federal Rule of Civil Procedure 54(c) limits damages to the amount pleaded in the complaint, "a district court has discretion to award ERISA damages that accrue during the pendency of an action." *Boland v. Yoccabel Const. Co.*, 293 F.R.D. 13, 19 (D.D.C. 2013) (internal quotation marks omitted); *see also Finkel v. Triple A. Grp., Inc.*, 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010) ("Rule 54(c) is not violated, however, when a court awards damages that accrued during the pendency of the litigation if the complaint put defendant on notice that plaintiff might seek such damages."). Since the complaint sought damages for all outstanding contributions due to the Pension Fund for the period of April 2013 "through the present," Compl. at 10, the defendants were aware that the plaintiff sought an award beyond that calculated in the complaint. *See Boland*, 293 F.R.D. at 19.

submit missing remittance reports from August to September 2019 and to repay the corresponding contributions, interest and liquidated damages for these months. *See* Pls.' Mot. at 14–15.

The plaintiffs filed this action on May 15, 2019. Dkt. 1. The defendants were duly served with the complaint and summons on May 20, 2019. Aff. of Service, Dkt. 5. Because the defendants did not answer or otherwise respond to the complaint within the time period allotted by Rule 12 of the Federal Rules of Civil Procedure, the plaintiffs requested an entry of default. Dkt. 6. The Clerk of Court entered default on June 13, 2019. Dkt. 7; Dkt. 8. On October 8, 2019, the plaintiffs moved this Court to enter a default judgment against the defendants under Federal Rule of Civil Procedure 55(b)(2).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure empower a federal district court to enter a default judgment against a defendant who fails to defend its case. Fed. R. Civ. P. 55(b)(2); *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). While federal policy generally favors resolving disputes on their merits, default judgments are appropriate "when the adversary process has been halted because of an essentially unresponsive party." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (internal quotation marks omitted).

Obtaining a default judgment is a two-step process. First, the plaintiff must request that the Clerk of Court enter default against a party who has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). The Clerk's default entry establishes the defaulting defendant's liability for the well-pleaded allegations of the complaint. *See Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014). Second, if the plaintiff's claim is not for a "sum certain," the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b). At that point, the plaintiff

"must prove his entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (internal quotation marks and alterations omitted).

When ruling on a motion for default judgment, a court "is required to make an independent determination of the sum to be awarded." *Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009) (internal quotation marks omitted). In that inquiry, the court has "considerable latitude." *Ventura*, 134 F. Supp. 3d at 103 (internal quotation marks omitted). The court may conduct a hearing to determine damages, Fed. R. Civ. P. 55(b)(2), but the court is not required to do so "as long as it ensures that there is a basis for the damages specified in the default judgment," *Ventura*, 134 F. Supp. 3d at 103 (internal quotation marks and alterations omitted).

## III. ANALYSIS

Due to the Clerk's default entry in this case, the defendants are deemed liable for the well-pleaded allegations in the complaint, including the allegation that the company failed to make timely contributions to the benefit plans. *Providence Constr.*, 304 F.R.D. at 35. With liability established, the Court must independently determine the amount owed by the defendants.

The defendants' obligations are set forth in Amboy's collective bargaining agreements with the Union. ERISA § 515 mandates that "[e]very employer who is obligated to make contributions to a multiemployer plan . . . [shall] make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

The collective bargaining agreement requires that Amboy contribute $0.15 per hour to the Pension Fund for all hours worked by each of its non-probationary employees. Compl. ¶ 16.

It also requires Amboy to submit remittance reports to the Pension Fund with its contribution amounts, the names of each covered employee, and the number of compensable hours for that month. *Id.* ¶ 18. If the Pension Fund entered "critical status" under the PPA, the agreement mandates that Amboy pay supplemental contributions according to a "Preferred Schedule." *Id.* ¶¶ 6, 22. Under the "Preferred Schedule," Amboy is required to pay supplemental contributions to the Pension Fund equal to 27.7% of all contributions otherwise due for October 2012 through September 2013; 37.6% of all contributions for October 2013 through September 2014; 48.3% of all contributions for October 2014 through September 2015; 59.8% of all contributions for October 2015 through September 2016; 72.1% of all contributions for October 2016 through September 2017; 85.5% of all contributions for October 2017 through September 2018; 99.9% of all contributions for October 2018 through September 2019; and 115.4% of all contributions effective October 1, 2019. *Id.* The SEIU Pension Fund was deemed to be in "critical status" during the relevant period, so Amboy owes supplemental contributions in addition to its standard contributions. *See id.* ¶ 20; *id.* Ex. 6, Dkt. 1-8.

In the collective bargaining agreement, Amboy also agreed to be bound by the Trust Agreement. *Id.* ¶ 17. The Trust Agreement—which outlines the enforcement and collection policy for delinquent contributions—permits the trustees to collect interest equal to 10% of unpaid contributions per year; liquidated damages equal to the greater of the interest due or 20% of unpaid contributions; and the Pension Fund's attorneys' fees and costs. *Id.*

If an employer like Amboy does not comply with such agreements, Section 502 of ERISA directs courts to award the amounts owed. *See* 29 U.S.C. § 1132(g) (stating that, if judgment is entered in favor of a benefit plan, the court shall award unpaid contributions, interest at the rate set by the plan, liquidated damages, and reasonable attorney's fees and costs).

According to the plaintiffs, Amboy disregarded its obligations from April 2013 through January 2019, and continuing to the present. *See* Compl. ¶ 29; Pls.' Mot. at 14. The plaintiffs now seek to recover the amounts owed. *Id*. The primary documents the plaintiffs have submitted in support of their motion for default judgment are (1) the declaration of Holdjiny Toussaint, the Pension Fund's Assistant Contributions Compliance Manager, *see* Dkt. 10; (2) a spreadsheet detailing the amount of delinquent contributions owed by Amboy, *see* Toussaint Decl. Ex. B, Dkt. 10; (3) the declaration of Diana Bardes, counsel for the plaintiffs, *see* Dkt. 11; and (4) an itemized bill from Bardes, *see* Bardes Decl. Ex. A, Dkt. 11. The declarations set forth the plaintiffs' calculations with specificity. Toussaint's declaration details the contributions and interest owed by Amboy to the Pension Fund. Bardes's declaration details the attorneys' fees and costs associated with this action. In particular, the declarations and the entire record establish that Amboy owes the following amounts totaling $29,864.23:

- $13,852.98 to the SEIU National Industry Pension Fund for unpaid contributions from April 2013 through July 2019, Toussaint Decl. ¶ 25;

- $4,728.39 to the SEIU National Industry Pension Fund for interest on the unpaid contributions, *id.*;

- $5,042.43 to the SEIU National Industry Pension Fund for liquidated damages, *id*. Ex. B[2];

- $6,240.43 to Mooney, Green, Saindon, Murphy & Welch, P.C. for attorneys' fees and costs, Bardes Decl. ¶ 19.

---

[2] Both the plaintiffs' Motion and the Toussaint Declaration state that this figure is $5,042.80, but this appears to be a typo. *See* Pls.' Mot. 7; Toussaint Decl. ¶ 25. The spreadsheet that adds up the total liquidated damages owed lists this figure as $5,042.43. *See id*. Ex. B.

Therefore, pursuant to the agreements between the parties and Section 502 of ERISA, the Court concludes that the plaintiffs are entitled to a total monetary judgment of $29,864.23.

The plaintiffs also seek equitable relief, namely, an order directing Amboy to submit reports and contributions for the months of August and September 2019. *See* Pls.'s Mot. at 14–15. Section 502 authorizes a district court to award "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). Equitable relief is often awarded when the defendant "has demonstrated no willingness to comply with either its contractual or statutory obligations or to participate in the judicial process." *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 242 (D.D.C. 2007) (citing *Int'l Painters & Allied Trades Industry Pension Fund v. Newburgh*, 468 F. Supp. 2d 215, 218 (D.D.C. 2007)).

As demonstrated throughout this action, Amboy appears unwilling to participate in the judicial process or comply with its contractual and statutory obligations. Amboy has disregarded its obligations to submit timely reports and pay monthly contributions to the Pension Fund. *See* Compl. ¶¶ 30, 32; Pls.' Mot. at 14–15. Also, Amboy's refusal to submit complete contribution reports continues to make a precise accounting of the outstanding contributions and interests impossible. *Id*. Thus, pursuant to the Court's discretionary authority under Section 502 of ERISA, the Court grants the equitable relief requested by the plaintiffs against Amboy. *See Boland v. Yoccabel Const. Co.*, 293 F.R.D. 13, 20–21 (D.D.C. 2013) (granting the plaintiffs' request that the "defendant be directed to comply with its obligations to submit all required reports and to make all contributions due" because the request reiterates the defendant's existing contractual obligations and because the defendant persistently breached these obligations).

**CONCLUSION**

For the foregoing reasons, the Court grants the plaintiff's Motion for Default Judgment. Dkt. 9. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

December 3, 2019